**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENNA DUGAN,

Plaintiff,

Case No. 2:26-cv-13138

v.

Hon.

POWERSCHOOL GROUP, LLC,

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Brenna Dugan ("Plaintiff"), by and through her attorneys, Hurwitz Law PLLC, hereby alleges as follows:

## INTRODUCTION

1. Plaintiff was a hardworking employee for almost two and a half years before she learned on December 10, 2025 that she would be terminated as part of a reduction-in-force, effective December 31, 2025.

2. Plaintiff had been approached regarding a promotion just one month prior.

3. Defendant's workforce reduction occurred in the chaotic months after Antonio Pietri took over as Chief Executive Officer, and the mass termination of employees impacted women to a significant degree.

4. Defendant's workforce reduction was used as an opportunity to discriminate against women in direct violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliott-Larsen Civil Rights Act.

5. Plaintiff submitted a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 18, 2026.

**PARTIES, JURISDICTION, AND VENUE**

6. Plaintiff is a resident of Ypsilanti, Washtenaw County, Michigan.

7. Defendant PowerSchool Group, LLC is a foreign for-profit corporation with its headquarters located at 150 Parkshore Drive, Folsom, California 95630, and roughly 3,000 employees nationwide.

8. The U.S. District Court for the Eastern District of Michigan has federal question jurisdiction over claims under Title VII of the Civil Rights Act of 1964 ("Title VII") pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under the state law claims pursuant to 28 U.S.C. § 1367.

9. Additionally, diversity jurisdiction is proper under 28 U.S.C. § 1332, as the matter in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper under 28 U.S.C. §1391, as a substantial part of the events and omissions giving rise to the claims occurred in this district.

11. Plaintiff seeks class representative status pursuant to Fed. R. Civ. P. 23 and the Elliott-Larsen Civil Rights Act.

## STATEMENT OF FACTS

12. Plaintiff was hired as Defendant's Copywriter Specialist on August 28, 2023.

13. Plaintiff consistently received excellent performance evaluations.

14. Plaintiff did not receive any formal or informal discipline.

15. Defendant's Senior Vice President of Marketing Trip Kucera and Chief Marketing Officer Perry Hardt approached her on two separate instances regarding a promotion to the position of Search Engine Optimization ("SEO") Lead.

### Defendant's Reduction-in-Force

16. Plaintiff was surprised to learn that she was included in a reduction-in-force ("RIF") on December 10, 2025, when she was invited to watch a pre-recorded meeting with Mr. Hardt.

17. Defendant's workforce reduction affected multiple departments, with some teams remaining largely intact.

18. Defendant's workforce reduction process or procedure was developed in consultation with Defendant's Human Resources Department.

19. Plaintiff was placed on leave, effective December 10, 2025.

20. Plaintiff's employment was terminated, effective December 31, 2025.

21. Plaintiff was provided with a list of terminated positions in Defendant's Marketing Department.

22. Plaintiff quickly noticed that most of the other terminated employees are women.

23. Defendant's Marketing Department had consisted of approximately sixty-five employees, and approximately forty-five were female.

24. A total of thirteen employees from Defendant's Marketing Department were included in the workforce reduction, eleven of which, or approximately eighty-five percent (85%), were female.

25. Defendant included a male employee, Vice President Austin Rohr, in its list of employees included in the reduction-in-force.

26. Mr. Rohr had been terminated for performance reasons in November.

27. Defendant included him on the list only to artificially inflate the number of male employees included in the reduction-in-force.

28. Defendant's selections were not based on legitimate criteria, such as seniority.

29. The criteria used, if any, permitted subjective decision-making.

30. The decisions regarding which employees would be laid off were made under extremely hurried circumstances with little, if any, regard to employees' job performance, qualifications, experience, and abilities.

31. Defendant engaged in a pattern or practice of intentionally and willfully terminating women or, if a rating procedure was used, assigning low ratings to women.

32. Most other terminated female employees had more seniority, including without limitation Director of Content Marketing Beth Blafka, Senior Director of Customer Advocacy Jannita Demian, Senior Director of Product Marketing Christy Lesko.

33. Defendant also terminated women but retained men in similar or identical roles.

34. Defendant terminated Senior Director of Digital Marketing Allison Query.

35. Defendant retained Director of Digital Marketing Brian Shelton.

36. Defendant terminated Senior Director of Product Marketing Christy Lesko.

37. Defendant retained Director of Marketing Campaigns Christopher Buecksler, Director of Product Marketing Will Moore, and Director of Product Marketing Nick Stamm.

38. Defendant terminated Manager of Creative Operations Devin Broughton.

39. Defendant retained Senior Manager of Creative Operations Andrew Dumpleton.

40. Defendant terminated Marketing Campaign Lead Samantha Melz.

41. Defendant retained Marketing Campaign Manager Lee Studt.

42. Defendant terminated Copywriter Specialists Courtney McCullers and Hannah Pulit.

43. Defendant retained Senior Copywriter Specialist Andy Durst.

44. Defendant also terminated women in director-level roles, including Ms. Blafka, Ms. Demian, and Ms. Hulbert, but retained men in director-level roles.

45. Defendant retained average or under-performing male employees.

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(a)**
**SEX DISCRIMINATION**
**Disparate Treatment**

46. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

48. It is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual. . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a).

49. A workforce reduction must not be used "as an opportunity to discriminate against employees who are in protected classes." *King v. HealthRider, Inc.*, 16 F. Supp. 2d 780, 784 (E.D. Mich. 1998).

50. Plaintiff is a woman and a member of a protected class.

51. Plaintiff was qualified for her position.

52. Plaintiff had never received any formal discipline of any kind before her termination.

53. Plaintiff met or exceeded all legitimate job expectations.

54. Mr. Kucera and Mr. Hardt[1] approached her on two separate instances regarding a promotion.

---

[1] Mr. Kucera and Mr. Hardt were both retained.

55. Plaintiff first learned that she was included in a reduction-in-force ("RIF") on December 10, 2025, when she was invited to watch a pre-recorded meeting with Mr. Hardt.

56. Plaintiff was terminated, effective December 31, 2025.

57. Plaintiff thereby suffered adverse employment action.

58. Defendant's alleged termination reason is a pretext.

59. Defendant's selections were not based on legitimate criteria, such as seniority.

60. The criteria used, if any, permitted subjective decision-making.

61. The decisions regarding which employees would be laid off were made under extremely hurried circumstances with little, if any, regard to employees' job performance, qualifications, experience, and abilities.

62. Defendant engaged in a pattern or practice of intentionally and willfully terminated women or, if a rating procedure was used, assigning low ratings to women.

63. Defendant also terminated women but retained men in similar or identical roles.

64. Defendant terminated Ms. Query, but retained Mr. Shelton.

65. Defendant terminated Ms. Lesko, but retained Mr. Moore and Mr. Buecksler.

66. Defendant terminated Ms. Broughton, but retained Mr. Dumpleton.

67. Defendant terminated Ms. McCullers and Ms. Pulit, but retained Mr. Durst.

68. Defendant also terminated women in director-level roles, including Ms. Blafka, Ms. Demian, and Ms. Hulbert, but retained men in director-level roles.

69. Defendant retained average or under-performing male employees.

70. Plaintiff was treated less favorably than male employees.

71. Plaintiff was discriminated against because of her sex.

72. Plaintiff submitted a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 18, 2026.

73. Defendant's conduct was willful and intentional.

74. Defendant's conduct was done with malice or reckless indifference.

75. Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2(k)**
**<u>SEX DISCRIMINATION</u>**
**Disparate Impact**

76. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

77. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

78. Plaintiff and similarly-situated class members are women and members of a protected class.

79. It is unlawful for an employer to use "a particular employment practice" that causes a disparate impact on the basis of sex. *Id.* at § 2000e-2(k).

80. Defendant used particular employment practices that caused a disparate impact on a protected group, including targeting departments and employees for a reduction-in-force and retaining male employees at a higher rate than female employees.

81. Defendant's employment decisions generated results that disfavored women and favored men.

82. Defendant's workforce reduction affected multiple departments, with some teams remaining largely intact.

83. A total of thirteen employees from Defendant's Marketing Department were included in the workforce reduction, eleven of which, or approximately eighty-five percent (85%), were female.

84. Defendant admits that "it was expected that any workforce reduction occurring within that group would result in a greater number of women than men being impacted."

85. Defendant's workforce reduction company-wide involved a selection rate less than four-fifths or eighty percent (80%) within the meaning of 29 C.F.R. § 1607.4, upon information and belief.

86. Defendant cannot demonstrate the challenged practice is "consistent with business necessity" within the meaning of 42 U.S.C. § 2000e-2(k).

87. Defendant's alleged reason for the challenged practice is a pretext.

88. Defendant's selections were not based on legitimate criteria, such as seniority.

89. The criteria used, if any, permitted subjective decision-making.

90. Defendant engaged in a pattern or practice of intentionally and willfully terminated women or, if a rating procedure was used, assigning low ratings to women.

91. Defendant terminated women but retained men in similar or identical roles.

92. Defendant also terminated women in director-level roles, but retained men in director-level roles.

93. Defendant retained average or under-performing male employees.

94. Plaintiff submitted a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 18, 2026.

95. Defendant's conduct was willful and intentional.

96. Defendant's conduct was done with malice or reckless indifference.

97. Plaintiff and similarly-situated class members were harmed, and continue to be harmed, in that they have suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

**COUNT III**
**SEX DISCRIMINATION IN VIOLATION OF THE ELCRA**
**Mich. Comp. Laws § 37.2101**
**Disparate Treatment**

98. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

99. Defendant is an "employer" within the meaning of Mich. Comp. Laws § 37.2201(a).

100. An employer shall not "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex." *Id.* at 37.2202(1).

101. Plaintiff is a woman and a member of a protected class.

102. Plaintiff was qualified for her position.

103. Plaintiff had never received any formal discipline of any kind before her termination.

104. Plaintiff met or exceeded all legitimate job expectations.

105. Mr. Kucera and Mr. Hardt approached her on two separate instances regarding a promotion.

106. Plaintiff first learned that she was included in a reduction-in-force ("RIF") on December 10, 2025, when she was invited to watch a pre-recorded meeting with Mr. Hardt.

107. Plaintiff was terminated, effective December 31, 2025.

108. Plaintiff thereby suffered adverse employment action.

109. Defendant's alleged termination reason is a pretext.

110. Defendant's selections were not based on legitimate criteria, such as seniority.

111. The criteria used, if any, permitted subjective decision-making.

112. The decisions regarding which employees would be laid off were made under extremely hurried circumstances with little, if any, regard to employees' job performance, qualifications, experience, and abilities.

113. Defendant terminated women but retained men in similar or identical roles.

114. Defendant terminated women in director-level roles, including Ms. Blafka, Ms. Demian, and Ms. Hulbert, but retained men in director-level roles.

115. Defendant retained average or under-performing male employees.

116. Plaintiff was treated less favorably than male employees.

117. Plaintiff was discriminated against because of her sex.

118. Defendant's conduct was willful and intentional.

119. Defendant's conduct was done with malice or reckless indifference.

120. Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

**COUNT IV**
**SEX DISCRIMINATION IN VIOLATION OF THE ELCRA**
**Mich. Comp. Laws § 37.2101**
**Disparate Impact**

121. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

122. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

123. Plaintiff and similarly-situated class members are women and members of a protected class.

124. It is unlawful for an employer to use "a particular employment practice" that causes a disparate impact on the basis of sex. *Id.* at § 2000e-2(k).

125. Defendant used particular employment practices that caused a disparate impact on a protected group, including targeting departments and employees for a reduction-in-force and retaining male employees at a higher rate than female employees.

126. Defendant's employment decisions generated results that disfavored women and favored men.

127. Defendant's workforce reduction affected multiple departments, with some teams remaining largely intact.

128. A total of thirteen employees from Defendant's Marketing Department were included in the workforce reduction, eleven of which, or approximately eighty-five percent (85%), were female.

129. Defendant admits that "it was expected that any workforce reduction occurring within that group would result in a greater number of women than men being impacted."

130. Defendant's workforce reduction involved a selection rate less than four-fifths or eighty percent (80%) within the meaning of 29 C.F.R. § 1607.4, upon information and belief.

131. Defendant cannot demonstrate the challenged practice is "consistent with business necessity" within the meaning of 42 U.S.C. § 2000e-2(k).

132. Defendant's alleged reason for the challenged practice is a pretext.

133. Defendant's selections were not based on legitimate criteria, such as seniority.

134. The criteria used, if any, permitted subjective decision-making.

135. Defendant engaged in a pattern or practice of intentionally and willfully terminated women or, if a rating procedure was used, assigning low ratings to women.

136. Defendant terminated women but retained men in similar or identical roles.

137. Defendant also terminated women in director-level roles, but retained men in director-level roles.

138. Defendant retained average or under-performing male employees.

139. Plaintiff submitted a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 18, 2026.

140. Defendant's conduct was willful and intentional.

141. Defendant's conduct was done with malice or reckless indifference.

142. Plaintiff and similarly-situated class members were harmed, and continue to be harmed, in that they have suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

**COUNT V**
**VIOLATION OF THE**
**BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT**
**Mich. Comp. Laws § 423.511**

143. Plaintiff incorporates by reference herein the foregoing paragraphs.

144. Defendant is an "employer" within the meaning of Mich. Comp. Laws 423.501(b).

145. Plaintiff first submitted a written request for a copy of her complete personnel records to Defendant's Chief People Officer Michele Haddad more than six months ago, on January 29, 2026.

146. Plaintiff thereafter renewed her request for her personnel file through written communications, including emails sent to Ms. Haddad and Darron Flagg, Esq. on February 6, 2026, February 11, 2026, and May 14, 2026.

147. Defendant has failed to provide the requested personnel records.

148. Defendant's failure was willful and intentional.

149. Plaintiff has suffered prejudice as a result of being deprived of her complete personnel records in preparing for litigation.

150. Plaintiff is entitled to monetary relief, including actual damages and reasonable attorney's fees pursuant to Mich. Comp. Laws 423.511.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff claims as follows:

A. Declaratory judgment;
B. Compensatory and exemplary damages;
C. All costs and reasonable attorney's fees;
D. Punitive damages;
E. Pre-judgment and post-judgment interest;
F. All further relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

*/s/ Kara F. Krause*
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
Attorney for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com
kara@hurwitzlaw.com

Dated: September 1, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENNA DUGAN,

Plaintiff,

Case No. 2:26-cv-13138

v.

Hon.

POWERSCHOOL GROUP, LLC,

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

**JURY DEMAND**

Plaintiff Brenna Dugan, by and through her attorneys, Hurwitz Law PLLC, hereby demand a jury trial in the above-captioned matter.

Respectfully Submitted,

HURWITZ LAW PLLC

*/s/ Kara F. Krause*
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
Attorney for Plaintiff
340 Beakes St., Ste. 125

Ann Arbor, MI 48104
noah@hurwitzlaw.com
kara@hurwitzlaw.com

Dated: September 1, 2026